Hogeboom, J,
The prisoner was on a previous day brought before the court on a writ of habeas corpus, sued out on behalf of the defendant, to inquire into the cause of his detention, and to procure his discharge on competent bail. He is now held before this court by the officer having him in charge, awaiting a decision upon this application.
By the return to the writ and other papers, it appears that the prisoner, in June, 1867, was indicted in Albany county for the willful murder of L. Harris Hiscock ; that the indictment was moved for trial at the Albany oyer and terminer held in November, 1867; that the trial was postponed on the motion of the defendant; that it was again moved at the oyer and terminer held in January, 1868, but the prisoner not being ready, the court was adjourned until April 20, 1868, at which time the trial commenced, and was concluded on May 7, afterward, resulting in a disagreement of the jury. At the Albany oyer and terminer, held on the third Monday of May, 1868, both parties appear to have been ready for, or willing to go to trial, but for reasons not very fully disclosed, but apparently growing out of the convenience of the court, the trial was not then proceeded with, nor an adjourned oyer and terminer appointed, as had been suggested and was apparently satisfactory to both sides. Since that time some effort has been made, thus far unsuccessful, to procure a judge who would be able to hold an extraordinary session of the court, under appointment from the governor, prior to the next regular session of the court on the second Monday of November next, and the "district-attorney expresses the belief that such efforts will yet be suc *282 cessful, but the counsel for the prisoner intimate that he will probably now not be ready for trial until the November oyer and terminer, and mainly, as I understand them, for the reason that the brother of the prisoner, Senator Cole, of California, is just about going home, and cannot conveniently return until near the time of the re-assembling of the United States Congress.
This recital of facts tends to show that there has been no lack of due diligence on the part of the prosecuting officer in moving the trial of the prisoner, and that he is even now ready to aid in procuring the appointment of an extraordinary session of the court, if it shall be desired by the prisoner, or deemed necessary for the purposes of justice. I have the same disposition, and though originally disinclined on account of temporary ill health and other engagements, to undertake the extraordinary labor of such a court, and much preferring that another judge should be assigned to that duty, yet as the one who is appointed to hold the November oyer and terminer, I should not feel at liberty to decline presiding at an earlier and extraordinary session of the court, if the governor should deem it most proper to appoint me to that duty. There will, therefore, in all probability, be no difficulty in procuring an early trial of the indictment, if it shall be desired by the prisoner, or be consistent with his proper preparation of his case. Hence, so far as his application is grounded on the great lapse of time which has taken place since his original arrest, and will take place before he can possibly be re-tried, I do not think it ought to be granted, because, beyond what is inevitably incident to all judicial proceedings, it has arisen, and is likely to arise, for the most part, from his own action. If it should hereafter become apparent that any undue delay is caused by the public authorities, that fact may furnish reason for a favorable consideration of a renewed application to be discharged on bail.
It is further claimed that the physical condition of the prisoner requires his release on bail. But I do not see that this condition is substantially different from what it *283 has heretofore been, or that his imprisonment has resulted of itself in any serious detriment to the prisoner’s health. This part of the application is not very strongly supported. It rests mainly upon a single allegation in the petition of the prisoner for this writ, that, in or about the year 1862, while serving in the army, he received a severe and dangerous internal injury, from which he has ever since suffered and is still suffering, and that in his judgment his physical condition renders his discharge from imprisonment upon bail absolutely necessary. The latter clause of the sentence is a mere expression of an opinion, which, however sincerely entertained or carefully formed, must, I think, yield to the preponderating evidence that his confinement has not seriously affected his health, or so decidedly impaired the same beyond what it otherwise would have been as to give cause for serious apprehension, or to demand as a matter of humanity or duty the entertainment of the application especially upon that ground.
The only remaining question for consideration, and it is that upon which the application is principally founded, is whether the occurrences or the result of the previous trial give such a character to the transaction as justify or require the admission of the prisoner to bail. The right in the court to admit to bail,, even in cases of murder, must be conceded. The object of imprisonment previous to trial is not punishment, but the security of the person of the alleged offender to await the judgment of the law. In ordinary cases this object is supposed to be attainable by the exaction of sufficient and reasonable bail. But as a general proposition, in cases of murder, as conviction of the offense results ,in taking the life of the offender, the • temptation to flee from justice is supposed to outweigh all inducements to remain, growing out of pecuniary obligation, no matter to what amount. And often, perhaps generally, though not always, in the case of consciousness of guilt or of probability of conviction, tins is so. This probability may naturally be supposed to decrease, though it is not always so, as the efforts to convict prove *284 unavailing. Hence, the result of a previous trial is very-proper to be considered in determining the probability of a future conviction, and in determining, also, the probability of the prisoner’s guilt. It is proper, therefore, to take into consideration all the circumstances ; the circumstances of the transaction, and the legitimate inferences to be derived from them, the evidence and proceedings upon the trial, the disagreement of the jury, the cause and nature of such disagreement, as reflecting probable light on the real character of the offense, and the ultimate result of a new trial.
In this case we start with an indictment against the prisoner, deliberately presented and perseveringly prosecuted, for one of the very highest crimes known to the law. This of itself is usually regarded, before trial, as presumptive evidence of guilt sufficiently strong to justify a refusal to bail. Then we have in the conceded or undenied facts of the transaction not only strong evidence of the act of killing, but that the act was done with premeditation, provided the prisoner was not insane, or under the temporary dominion of a sudden and uncontrollable frenzy. The prisoner having previously provided himself with a pistol, and loaded the same, proceeded to the office of a principal hotel in Albany, and without any previous admonition or conversation or any provocation at the time, other than such as might be supposed to arise from the sight of the alleged destroyer of his domestic peace, shot the deceased instantly dead. I have examined the testimony taken on the trial with the care required by its importance. As I may possibly be required to preside on the trial hereafter to be had, I will not venture to express an opinion upon its legitimate effect. It is not, however, improper to say that the charge of the able and learned judge who presided on that trial (which I have also read with the attention due to the source from which it proceeded), tends strongly to the conclusion that the prisoner is guilty of murder, unless saved therefrom by irresponsibility for his act growing out of mental aberration. This, in substance, must be the main defense on the trial, for whatever sympathy a properly *285 constituted mind must necessarily and inevitably indulge in reference to the prisoner, growing out of circumstances -alleged by popular rumor to be connected with his domestic history, the very existence of these circumstances is a matter of controversy, and, even if true, they probably, so far as I can gather from the case as to the period of their supposed occurrence, can never be legitimately introduced in evidence as, in themselves, an entire and absolute justification for the act of killing, or otherwise than in reference to the effect which a belief in their supposed occurrence produced, or would naturally produce, upon the mind or conduct of the prisoner.
It is true the defense of insanity or insane impulse was not wholly founded upon evidence of this character, but upon a supposed hereditary or family tendency in that direction, and upon a derangement of bodily and mental health and functions occasioned by injuries received and. sufferings endured during service in the late war.
But the precise effect of these upon the mind of the prisoner "was the subject of grave controversy on the trial, as also was his actual mental condition at the time of the commission of the alleged murder, and immediately previous thereto. In the most favorable aspect of this evidence for the prisoner it may, I think, be said to have left the case not wholly free from doubt. Assuming this to be so, and looking at the clear and unqualified evidence to which I have heretofore referred upon other facts of the case, will not public justice be better subserved and the certainty of the execution of the judgment of the law be more effectually secured by keeping the prisoner in confinement for a short time longer ?
The jury on the previous trial disagreed, and this is put forward as a strong reason for bailing the prisoner. The circumstances and mode of their disagreement are sufficiently established. I admit the affidavits of the jurors heretofore conditionally read upon that subject. From them it is apparent that throughout (unless possibly upon the last ballot) six of the jurors were in favor of acquittal, and six in favor of conviction of the crime of murder, *286 though the latter were willing to adopt a verdict of manslaughter in the third degree, it it could be made unanimous. The opinions of all these jurors, arrived at after a protracted trial, after great deliberation and under the charge of an enlightened court, are entitled to great respect, but are nevertheless not conclusive. Taking them as they are, they leave the matter in great doubt. If six of them were in favor of acquittal, six of them were also in favor of conviction, and if the result of another trial should, as it may possibly do, support the opinion of the 1 tte, it might well be doubted whether a discretion exercised in favor of bailing the prisoner was judiciously exerted.
As to the probable result of the trial which is hereafter to take place, or as to what its a dual result should be, it is unbecoming in me, perhaps, to express an opinion. On the question of bailing the prisoner, that does not seem to mi to be precisely the question. It is not precisely whether a sec nd jury is likely to convict, for a jury may be swayed from their duty of conviction or acquittal; nor precisely whether the prisoner is guilty of the offense charged, for a judicial tribunal on such on occasion as this cannot be asked to make so critical an examination of the evidence in the case ; nor precisely whether, judging from the mental and moral characteristics of the prisoner, he is likely, notwithstanding the grave character of the accusation, to submit himself, if allowed his freedom, to the judgment of the law, but whether, on the whole, the line of safe precedent is not better followed, and the cause of public justice more securely protected by refusing than accepting bail, by confining than discharging the prisoner—whether the gravity of the accusation is not such, supported as.it is by an indictment deliberately found, and by much evidence on a trial already had, as well as by the opinions of six jurors after half a month’s protracted investigation, as to make it safer and better on the whole for the general interests of justice and the protection of the whole community, that the defendant should submit to a little longer confinement, which is insepara *287 ble, to a greater or less extent, from all criminal accusations, than that a temptation to escape from the vengeance of the law in a possible contingency should be afforded, and, at the least, a possible misconstruction of an act of judicial discretion should occur.
It is proper to do all in my power to prevent such misconstruction, and therefore to say that while a decision to admit to bail would furnish no just ground for an inference in favor of "the acquittal of the prisoner, so a contrary conclusion should not be construed as evincing any opinion of the court in favor of conviction, but simply as a precautionary measure to guard the just rights of the public, while productive of no real detrim nt to the legal rights of the accused party.
On the whole, after the best consideration I have been able to give to the case, I am of opinion that the application to admit the prisoner to bail should be denied, and that he should be remanded to the custody of the sheri t of the county of Albany.
Order accordingly.